**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 13 C 7709 |
| ) | |
| RONALD S. SMITH, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

On August 26, 2010, a jury found Ronald Smith guilty of conspiring to possess five kilograms or more of cocaine with intent to distribute and with attempting to possess five kilograms or more of cocaine with intent to distribute. On October 27, 2010, another judge of this court sentenced Smith to fourteen years in prison (168 months).

Smith has moved pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence. He alleges that his lawyers rendered ineffective assistance of counsel in failing to inform him of a proposed plea agreement and in failing to offer at sentencing appropriate evidence and argument about his military service and PTSD diagnosis.

For the reasons stated below, the Court denies Smith's motion.

**Background**

On December 17, 2008, the government filed a criminal complaint against Smith charging him with narcotics offenses. Smith was arrested the next day. On March 5, 2009, the government indicted him on charges of conspiring to distribute and possess

with intent to distribute five kilograms or more of cocaine between 2003 and December 6, 2008 and attempting to possess with intent to distribute five kilograms or more of cocaine on December 5, 2008. On March 25, 2009, Smith was released on bond.

At first, Smith, who resided in Columbus, Ohio, retained Kenneth Boggs (also from Columbus) as his trial counsel. But Boggs abandoned Smith's case around May 2009 and was "never seen or heard from by either Mr. Smith or the Court again." 2255 Mot. at 2. Boggs was eventually suspended from practice by the Ohio Supreme Court.

Smith then retained Cornelius Lewis, who before that time apparently had been involved as second chair to Boggs, though that is less than crystal clear. Lewis appeared at some but not all, or even most, of the pretrial court appearances. Smith alleges in his section 2255 motion that "several attorney's [sic] substituted in for Mr. Lewis on behalf of Mr. Smith at various status conferences, none with Mr. Smith's consent and all unfamiliar with him, his case, or the procedural posture of his case." Id. at 2-3. The record reflects, for example, that attorney Nicholas Kournetas, who had never met or spoken with Smith, nevertheless represented him at a status hearing on January 6, 2010. It does not appear that Smith himself attended any of the status conferences; presumably his appearance was waived by the judge who was presiding over the case.

On February 1, 2010, the government sent Lewis a draft plea agreement. The draft plea agreement stipulated that "defendant agrees to enter a voluntary plea of guilty to Count One of the indictment, which charges defendant with conspiring to distribute and possess with intent to distribute a controlled substance, namely, 5 kilograms or more of mixtures and substances containing a detectable amount of cocaine . . . ."

2

Govt.'s Resp., Ex. E (draft plea agreement) at 2.  The draft agreement contemplated that Smith would admit that he had bought at least 1,500 kilograms of cocaine from a co-conspirator to distribute to others.

The draft plea agreement reflected that that the charge to which Smith would be pleading guilty carried a mandatory minimum sentence of 10 years.  It also contemplated that the parties would acknowledge that the Sentencing Guidelines base offense level was 38, because the amount of controlled substances involved in the offense exceeded 150 kilograms.  Under the proposal, the parties would agree to disagree on whether Smith should get a "role in the offense" enhancement, with the government taking the position that a two-level enhancement was warranted because Smith was a manager or supervisor, and Smith free to present evidence and argument to the contrary.  The draft contemplated that the government reserved the right to challenge a reduction for acceptance of responsibility, with Smith free to argue that the reduction should apply.  The government agreed, however, that if the court gave Smith credit for acceptance of responsibility, the government would seek a further one-level reduction based on the timeliness of Smith's guilty plea.  The draft plea agreement stipulated that Smith had zero criminal history points and that he was in criminal history category I.  The draft plea agreement reached the following conclusions regarding Smith's advisory Guidelines range:

> if the government's calculations are correct, the anticipated offense level is 37 (if the Court finds that defendant has accepted responsibility), which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 210 to 262 months' imprisonment . . . .  If defendant's calculations are correct, the anticipated offense level is 35, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing

3

Guidelines range of 168 to 210 months' imprisonment . . . .

*Id.* at 8.

On February 1, 2010, Lewis sent the government an e-mail acknowledging that he had received the draft plea agreement and stating his intention to review the agreement with Smith. During a March 3, 2010 status hearing (at which Smith was not present), Lewis told the judge that both he and Smith had reviewed the draft plea agreement and that Smith might decide whether to accept the agreement by April 14, 2010. On April 12, 2010, Lewis sent the government another e-mail, stating that "I have spoken with my client and it looks as if we need to set this case for trial as he is unwilling to plead to anything carrying the mandatory 10 year minimum." Govt.'s Resp., Ex. H.

On June 21, 2010, the judge set Smith's case for a jury trial on August 23, 2010. On July 1, 2010, Lewis informed the district court that the parties had been unable to reach a plea agreement. Smith did not attend this hearing and maintains that he was unaware of it.

Smith denies that Lewis ever told him of the existence of the draft plea agreement. Smith also denies that he rejected the government's proposal or that he refused to consider accepting the statutory minimum sentence of ten years' imprisonment.

At trial, the government introduced into evidence recorded phone conversations between Smith and his co-conspirator, testimony of cooperating witnesses who had delivered cocaine to Smith and his co-conspirator, and testimony of witnesses who were members of law enforcement. On August 26, 2010, the jury found Smith guilty of both

4

the conspiracy and attempt charges.

In the presentence report (PSR), the probation officer calculated Smith's adjusted offense level as 43 and his criminal history category as I, resulting in an advisory range under the Sentencing Guidelines of life imprisonment. The probation officer's calculations depended in part on the conclusion that Smith "possessed and/or distributed at least 150 kilograms or more of cocaine." PSR at 8. The probation officer recommended a three-level role in the offense enhancement on the ground that Smith was a manager or supervisor of the offense. The PSR made reference to Smith's military service, including his commendations, assignments, and training. *Id.* at 12-13. It also noted that Smith had reported suffering from depression and stress, inability to sleep, and other symptoms that he attributed to "being in combat zones and witnessing killings." *Id.* at 13. The PSR also contained details regarding psychological treatment he had received in 2009 at a Veterans Administration care center after he reported inability to sleep and having frequent nightmares that involved his service in combat. *Id.* The PSR also reported that a VA psychologist advised that Smith was assessed to be at risk for PTSD and was referred for outpatient mental health treatment. *Id.*.

At sentencing, the district judge heard extensive argument regarding the quantity of drugs for which Smith should be found responsible under the Sentencing Guidelines. The prosecutor argued for a quantity of 200 kilograms of cocaine. Govt.'s Resp., Ex. J at 11. She contended that Smith had been involved in numerous trips between Ohio and Chicago, going back to 2006, during which he and others had transported multi-kilogram quantities of cocaine. *Id.* at 12. The prosecutor argued that the evidence supporting this was extensive, credible, and corroborated, and she discussed the

5

evidence in detail.  *Id.* at 12-15.  In response, Lewis argued that the government's quantity contention was speculative and unsupported.  *Id.* at 15-18.  In rebuttal, the prosecutor sought to reinforce her contention that the government's proposed drug quantity was corroborated in the record.  *Id.* at 18-20.

The judge rejected the government's argument and determined that the base offense level was 34 after finding that the quantity of cocaine involved in the offense was 20 kilograms.  *Id.* at 23-24.  She flatly rejected the government's reliance on testimony by cooperating witnesses, finding that they had given contradictory statements and that their testimony regarding drug quantities was "infla[t]ed or speculative."  *Id.* at 21.  The judge concluded:  "in terms of establishing a reliable basis for the amount of cocaine previously distributed or sold to Mr. smith and/or Mr. Baker, it's not grounded on reliable evidence."  Id.  Rather, the judge concluded, the government had shown Smith to be responsible only for 20 kilograms, id. at 22, which appears to have been the  amount established regarding the sting transaction that was the focus of the evidence at Smith's trial.

The judge rejected the government's argument for a firearm enhancement and ultimately concluded that the adjusted offense level was 37 because "there is a basis to apply the three-level enhancement for being a manger or supervisor, with the understanding that Mr. Smith supervised."  *Id.* at 40.  She found that "Mr. Smith is in a criminal history category I, not having prior criminal convictions . . . ."  *Id.* at 41.  The probation officer verified that the resulting advisory sentencing guidelines range was 210-262 months (roughly 18-22 years).  *Id.*

Among the mitigating factors that Lewis presented at sentencing was the fact that

6

Smith "has paid a tremendous debt to society as a military vet." *Id.* at 43-44. Lewis did not, however, make reference to any mental health issues.

In sentencing Smith, the judge stated that "[y]ou served honorably in the military as a military police officer, and I relied – I see you won awards, a number of awards, including a combat award. You had special ops or special operations assignments . . . and I take that in consideration." *Id.* at 53-54. The judge concluded that a sentence significantly below the advisory Sentencing Guidelines range was warranted but that a sentence greater than the statutory minimum of ten years was appropriate. She imposed a sentence of 14 years (168 months) in prison. The judge noted, "I do find that 18 years is greater than necessary for the offense given your lack of a criminal history, the positive aspects of your life, and the unlikelihood of recidivism as to you." *Id.* at 54. Although the judge did not mention that Smith had been assessed to be at risk for PTSD, it is apparent that she was aware of his mental health issues, because she made a recommendation to the Bureau of Prisons that Smith receive mental health counseling. *Id.* at 56.

Smith retained new counsel and appealed his conviction and sentence to the Seventh Circuit. He argued, among other things, that the district court erred in imposing the role in the offense enhancement. On March 22, 2012, the Seventh Circuit affirmed Smith's conviction and sentence. *United States v. Smith*, 674 F.3d 722 (7th Cir. 2012). On October 29, 2012, the U.S. Supreme Court denied Smith's petition for writ of certiorari. *Smith v. United States*, 133 S. Ct. 546 (2012).

On October 28, 2013, Smith filed the present motion to vacate his sentence. As stated earlier, Smith contends that his trial counsel failed to inform him that the

government had offered a plea deal and failed to offer appropriate evidence and argument at sentencing regarding his military service and PTSD diagnosis. Smith maintains that he would have agreed to plead guilty had his counsel advised him of the proposed deal; this would have yielded a more favorable sentence than the one impose after he was convicted at trial; and the district court would have imposed a lesser sentence had his lawyers appropriately described his military service and mental health problems to the court.

## Discussion

A defendant is eligible for relief pursuant to 28 U.S.C. § 2255 only when there has been "an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013). Smith argues that his lawyers rendered ineffective assistance of counsel at the pre-trial and sentencing stages of his case. Ineffective assistance of counsel is an error of constitutional magnitude, as "all defendants facing felony charges are entitled to the effective assistance of competent counsel" under the Sixth Amendment. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (internal quotation marks omitted).

In assessing a claim of ineffective assistance of counsel, the Court applies the two-part test described in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* test, a defendant establishes ineffective assistance of counsel by showing that: 1) the performance of his lawyers "fell below an objective standard of reasonableness," and 2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at

8

688, 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

Smith claims that his lawyer rendered ineffective assistance of counsel is by failing to inform him that the government had offered him a plea agreement.  In *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012), the Court affirmed that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." In *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012), a companion case to *Lafler*, the Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused . . . ."  "When defense counsel allow[s] [a plea] offer to expire without advising the defendant or allowing him to consider it, defense counsel [does] not render the effective assistance the Constitution requires."  *Id.*  Thus if Smith can demonstrate that his lawyers failed to notify him of the draft plea agreement, he will satisfy the deficient-performance aspect of the *Strickland* test.

The second part of the *Strickland* test requires Smith to show that his lawyer's deficient performance prejudiced him.  In *Frye*, the Court applied the prejudice portion of the *Strickland* test to an ineffective assistance claim involving counsel's failure to advise the defendant of a proposed plea agreement.  The Court stated that to show prejudice in this situation, the defendant must demonstrate a reasonable probability that:  1) he would have accepted the plea offer had he been afforded effective assistance of counsel; 2) the plea would have been entered without the prosecution withdrawing the offer or the trial court refusing to accept the deal; and 3) the end result would have been more favorable, by reason of a plea to a lesser charge or a less severe sentence.  *Frye*,

9

132 S. Ct. at 1409.

## A. Plea agreement

### 1. Deficient performance

Smith offers a signed declaration in support of his claim regarding the draft plea agreement. He states that "[d]uring the entire period of representation, I was never notified by anyone about a plea offer from the government related to my charges . . . . The first time that I realized the government offered me a plea agreement was when I read about it in the transcripts from the status conferences." 2255 Mot., Ex. 4 (Smith Decl.).

In response, the government offers an affidavit from Lewis in which he states that "I personally explained to Ronald Smith on more than one occasion . . . that the Government was offering him a plea but that he would be facing the mandatory minimum and that the Government was seeking to treat him as an organizer/leader." Govt.'s Resp., Ex. I (Lewis Aff.) ¶ 13. Lewis further states that Smith said he would "possibly" consider a plea but only if the government gave up on the role in the offense enhancement and made him eligible for the safety valve, which would render the mandatory minimum sentence inapplicable. *Id.* ¶ 14. When he told Smith that the government was unwilling to do this, Lewis says, Smith "stated that he would not plea [sic] and that he wished to take his case to trial." *Id.* ¶ 15. Lewis further states that later, after he took over as lead counsel when Boggs abandoned the case, he told Smith that he should consider a guilty plea but that Smith replied, "I am taking my case to trial because I am not guilty." *Id.* ¶ 17. Lewis states that he discussed with Smith, "in detail . . . the feasibility of entering into a plea agreement . . . " *Id.* ¶ 23. The

government also points to the transcript of a status hearing on March 3, 2010, during which Lewis told the judge that he and Smith had each reviewed the draft plea agreement and that Smith was still considering it. In addition, the government points to the earlier-referenced April 12, 2010 e-mail in which Lewis advised the prosecutor that "I have spoken with my client and it looks as if we need to set this case for trial as he is unwilling to plead to anything carrying the mandatory 10 year minimum." Govt.'s Resp., Ex. H.

The government dismisses Smith's statement as self-serving. It may well be—most testimony by a party is self-serving—but that is of no consequence. There is no rule barring admission of self-serving testimony, nor is there any sort of iron rule that self-serving testimony cannot carry the day. This, in the Court's view, is a fairly self-evident proposition, but even if that were not the case, the Seventh Circuit has recently reinforced it in the somewhat related context of whether a "self-serving" affidavit can defeat a summary judgment motion in a civil case and require the case to go to trial. *See, e.g., Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). That aside, the Court is at a loss to identify any form of evidence, other than his own statement, that Smith could offer to try to prove a negative, namely that his lawyer did not advise him of the plea agreement. The Court also notes that Lewis likewise has offered no documentation confirming that he provided the draft plea agreement to Lewis, and as previously discussed it appears that Smith was not required to attend the court hearings where the possibility of a guilty plea came up. In short, there is a factual dispute regarding whether Lewis met his duty to advise Smith of the draft plea agreement that the government had sent.

11

### 2. Prejudice

As stated earlier, to demonstrate the requisite prejudice on his claim regarding the draft plea agreement, Smith must show a reasonable probability that: 1) he would have accepted the draft plea agreement had he known about it; 2) the government would not have taken it off of the table and the court would not have refused to accept it; and 3) pleading guilty under the agreement would have resulted in a more favorable judgment or sentence for Smith than he received after losing at trial.

Smith's signed declaration, in which he states that "[h]ad I been offered a plea I would have probably accepted it because at the time I understood that I was facing a sentence of 30 years to life imprisonment," 2255 Motion, Ex. 4, is sufficient for present purposes on the first point. Lewis's affidavit contradicts Smith's statement, but as indicated earlier, the resulting credibility issue cannot be determined without an evidentiary hearing.

The government does not contend that it would have taken the draft plea agreement off of the table or that the district court would have refused to accept it. The Court sees nothing in the draft plea agreement that might have led the judge handling Smith's case to reject it. Smith has satisfied this aspect of the prejudice inquiry.

Smith has failed to show, however, that there is a reasonable probability that he would have gotten a better sentence had he pled guilty pursuant to the draft plea agreement. As the government notes, the draft plea agreement would have required Smith to acknowledge responsibility for 1,500 kilograms of cocaine. In other words, Smith would have had to a drug quantity even greater than the quantity for which the prosecutor argued unsuccessfully at his sentencing hearing. As discussed earlier, the

judge squarely and decisively rejected the government's position, finding the evidence upon which it was based to be unreliable and speculative. Rather, she found Smith responsible only for 20 kilograms, the amount involved in the sting transaction that had been proven at trial via (among other things) recorded conversations involving Smith. The quantity that Smith would have been required to accept in the plea agreement is 75 times greater than what the judge ultimately found. With Smith's agreement to the larger quantity, there would have been no occasion for the sentencing judge to make a lower quantity finding.

Smith's agreement to a 1500 kilogram quantity finding likely would have made the sentencing hearing look far different. Smith would have been before the court as a major-league drug trafficker, with a far greater degree of culpability and likelihood of recidivism than appeared to be the case at the sentencing hearing that actually occurred.

Had Smith accepted the proposed plea agreement, the advisory Guidelines range, given the 1500 kilogram quantity and the role in the offense enhancement, would have been 210 to 262 months imprisonment, which is the same range the sentencing judge ultimately used. As indicated earlier, the judge imposed a sentence significantly below the low end of this range, namely 168 months. Smith's ineffective assistance claim requires him to show a reasonable probability of an even lower sentence had he accepted the proposed plea agreement. There is no basis in the record or otherwise to believe that the sentencing judge would have imposed a still lower sentence had Smith admitted to being the big-time drug trafficker that a 1500 kilogram quantity would have entailed. The Court concludes that Smith has failed to show a reasonable probability of

a lower sentence under that scenario.

For these reasons, the Court overrules Smith's claim regarding the draft plea agreement.

**B.    Sentencing**

Smith also contends that his trial counsel rendered ineffective assistance by failing to give the sentencing judge sufficient information regarding his military service and his PTSD diagnosis. The PSR, however, discussed Smith's military service, including his commendations, assignments, and training, and it provided significant details regarding his mental health history, including his symptoms, his treatment at a VA facility, and the fact that he had been assessed to be at risk for PTSD. And as the government correctly notes, the transcript of the sentencing hearing reflects that Lewis did, in fact, argue Smith's military service as mitigating evidence and that the judge took this evidence into account. Lewis told the judge that Smith "has paid a tremendous debt to society as military vet"; the judge stated that she was taking into account the fact that Smith "served honorably in the military as a military police officer" and "won awards, a number of awards, including a combat award." Govt.'s Resp., Ex. J at 43-44, 53-54. For these reasons, Smith has not shown that Lewis's performance was deficient in failing to raise the issue of Smith's military service at sentencing

The sentencing transcript shows that Lewis did not offer any arguments about Smith's mental health history as mitigating evidence. To establish that this omission constituted ineffective assistance of counsel, however, Smith must show that it prejudiced him. Courts have declined to find prejudice in trial counsel's failure to argue certain evidence in mitigation when all of that evidence was before the sentencing court.

14

In *Woratzeck v. Stewart*, 97 F.3d 329 (9th Cir. 1996), a habeas corpus case, the court held that trial counsel's failure to investigate mitigating evidence or present witnesses at the sentencing hearing did not prejudice the defendant, because all of the information that the witnesses would have provided, including the defendant's "history of nonviolence, his positive relationships with his family members, his problems with alcohol, and his failed attempt to resuscitate his father . . . . was in the presentence report, which the sentencing court considered for mitigation purposes." *Id.* at 336. In *Andrashko v. Borgen*, 88 F. App'x 925 (7th Cir. 2004), another habeas corpus case, the court held that trial counsel's failure to argue the defendant's "troubled childhood and mental condition" as mitigating evidence did not prejudice the defendant. *Id.* at 930. One of the reasons for the court's holding was defendant's "admission on appeal that all of the mitigating evidence was contained in the presentence report and therefore was already available to—and presumably considered by—the trial court." *Id.* The court noted that the defendant's trial counsel "might have been able to present the mitigating factors in a more positive light, but such a possibility does not establish prejudice." *Id.*

The details of Smith's mental health history were included in the PSR. It is also reasonably clear that the sentencing judge actually took Smith's mental health history Into account: she recommended to the Bureau of Prisons that Smith receive mental health counseling. Govt.'s Resp., Ex. J. at 56. For these reasons, the Court concludes that Smith has failed to show a reasonable probability that his sentence would have been lower had Lewis argued the point at sentencing.

## Conclusion

For the foregoing reasons, the Court denies Smith's section 2255 motion and

15

directs the Clerk to enter judgment in favor of the government and against Smith. The Court issues a certificate of appealability regarding both of Smith's claims, as reasonable jurists could differ regarding their merit.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 2, 2014